## WILLIAM SNELL *versus* THE BRIDGEWATER COTTON GIN MANUFACTURING COMPANY.

If on a complaint against a mill-owner for flowing the complainant's land, the jury estimated the yearly damages and also what sum in gross will be a just compensation for the right of maintaining and using the dam forever, and the complainant elects to receive the yearly damages, he is not precluded from making a future application for a jury to reassess the damages. *Aliter*, if he elects to receive the sum in gross.

IN a complaint brought by Snell against the Bridgewater Cotton Gin Manufacturing Company, for flowing his land by means of their mill-dam, he alleges, that he presented a former complaint in 1831, and the jury appraised the yearly damages

done by the respondents by flowing his land, at the sum of $25, and they further found that the sum of $400 in gross, would be a just compensation for all the damages done or to be done to him by raising and keeping up a head of water at a specified height and for specified times in the year, to be received by him, if he should so elect, instead of the yearly damages ; that in 1832 the verdict was accepted and recorded, and it was adjudged that the complainant recover the sum of $25 each and every year, being the yearly damage to his land ; and that the yearly damages allowed him by the judgment are wholly insufficient and ought to be increased ; wherefore he prays that a jury may be impanelled to appraise the yearly damage which he ought to recover.

Snell
v.
Bridgewater
Cotton Gin
Manuf. Co

To this complaint the respondents demurred.

*Eddy* and *Warren* supported the demurrer.

*W. Baylies* and *Packard*, for the complainant, cited *Staple v Spring*, 10 Mass. R. 72.

Oct. 23d,
1835, at
Plymouth.

Morton J. afterward drew up the opinion of the Court. The complainant having had the damages done to his land by the overflowing of it by the respondents, assessed according to law, now applies for a second jury, with a view to obtain an increase. The complaint sets forth summarily the former proceedings and judgment, and the demurrer to it raises the question, whether the complainant is entitled to a new appraisement of annual damages. This depends upon the construction and effect of the statute of 1829, *c.* 122.

The statute of 1795, *c.* 74, § 3, gives to either party dissatisfied with the appraisement of damages, a right to have another appraisement, by another jury, and so on *toties quoties* as long as either party may desire a revision. If this provision is now in force, the complainant must prevail. Is it repealed ?

The last statute is " in addition to the several acts for the support and regulation of mills," and necessarily recognises their continued existence. It does not expressly repeal any part of the former statutes. If the third section of the statute of 1795, *c.* 74, or any of its provisions, are repealed, it must be by implication.

" The law does not favor a repeal by implication ; nor is it to be allowed unless the repugnancy be quite plain ;" " it has

ever been confined to repealing as little as possible of the preceding statute." "Although two acts are seemingly repugnant; yet they shall, if possible, have such construction that the latter may not be a repeal of the former by implication." Bac. Abr. *Statute D; Foster's case,* 11 Coke, 63 ; *Weston's case,* Dyer, 347. In addition to these general principles we should bring to the construction of this statute one or two considerations peculiarly applicable to them. The whole˙of the statute proceedings in relation to mill-dams and flowing lands, are not only in derogation of the common law, but are somewhat arbitrary in their operation. They authorize one man to take from another the beneficial use of his property without his consent, and at a price to be fixed by strangers. This additional act, giving to the land owner a right to take pay for the perpetual servitude imposed upon his land, if he prefers it to an annual compensation, was manifestly intended for his relief and benefit. Upon every ground, therefore, the last statute should, if it will admit of it, receive such a construction as will not diminish the rights secured by the former statute.

But the respondents' counsel contend, that there is such an irreconcilable repugnancy between the provisions of the two statutes, that the one must necessarily be a repeal of the other. The clause relied upon as annulling the former statute right to a second jury to "increase or decrease the damages," is in the close of the first section. The general provisions of this section are engrafted upon the provisions of the old law. The jury are to be impanelled and to discharge their duties according to the regulations of the old statutes. The new statute adds new powers and duties to the old ones. While the jury are assessing the annual damages and determining for what time and to what extent the mill-owners may flow, they are required also to appraise the gross amount which shall be paid for the perpetual right of flowing ; and the election between the annual and gross damages is given to the land owner. The "verdict being returned, the judgment thereon shall be final, any law or usage to the contrary notwithstanding." Upon this the respondents' counsel contend, that the judgment is to be conclusive, not only for the gross damages when they are elected, but also for the annual damages when the judgment is rendered for them.

It may be very reasonable, and in accordance with the usages and sound principles of law, that the judgment for the gross damages or for all past damages should, while unreversed, be conclusive. But when it undertakes to fix a prospective rule for the recovery of damages which have not accrued, it would seem to be unreasonable and unjust to make it unchangeable. The damages may be greater or less than was expected ; the effect of the flowing may, on experiment, prove to be different from what was anticipated ; the value of the land or its products may vary, and many circumstances may occur in the lapse of time, which would render a new appraisement indispensable to the equal distribution of justice between the parties.

Although the language of this statute upon this point is not clear, yet inasmuch as the object of the legislature was to provide a means of ascertaining the value of a perpetual servitude upon the complainant's land, and not to affect the appraisement of annual damages or to impair his right to recover them, the fair presumption is, that the effect of the judgment is confined to the same subject. The nature of the proceedings clearly indicates, if it does not imperiously require this construction. A judgment for the gross damage must be conclusive. There can be no reason for revising it, which does not apply to every other final judgment. In addition to which the statute requires, as a condition precedent to the enjoyment of the right of flowing, that the mill owner should satisfy the judgment within three months from the election of the complainant to receive the gross damage. But in relation to prospective damages it is not so. Reason and justice require that the parties should have them reassessed whenever a change of circumstances may render it necessary. It certainly would be unwise and presumptuous for a jury now to undertake to determine what will be the value of the annual income of land a hundred or a thousand years hence. We cannot believe that the legislature intended to establish such a rule. And as there is no express language to this effect, we certainly will not adopt it by implication.

Furthermore, the language of the statute may be literally and fully satisfied without adopting a construction which seems to

us absurd and mischievous. The distinction between *final* and *interlocutory* judgment is familiar to every lawyer. " *Interlocutory* judgments are such as are given in the middle of a cause and do not finally determine and complete the suit." 3 Bl. Comm. 316. " *Final* judgments are such as at once put an end to the action." Ibid. 398. *Final* is often used in the statutes in this, which is its proper legal sense. And in this clause it is in our opinion used to confine the adjudication of the case to the Common Pleas, and means a judgment of that court which cannot be appealed from ; and the object in introducing this clause probably was to exclude the right of appeal.

The judgment is technically and legally *final*. It is perfectly conclusive upon the matter adjudicated. Unless reversed it is forever binding upon the parties. . The gross damages and the past damages are unchangeably fixed. But the prospective effect of the judgment is regulated by statute. In addition to its usual functions it is made the rule for future damages until one of the parties shall choose to procure a reappraisal of them. This prospective operation is not the legitimate office of a judgment. It is merely a regulation superinduced by the force of the statute. It is not, strictly speaking, a part of the judgment. It cannot be enforced by execution. Judgments have to do with the past and not the future. The new appraisement of damages does not impugn the former judgment. That remains in force and is conclusive as to every thing upon which it properly acted. These regulations for the new appraisement of damages, from time to time, on the application of either party, we think are not repealed by any of the provisions of the last statute.

In this view we are confirmed by the opinions of the learned commissioners who revised our statutes. See Revised Stat c. 116, § 22, 33.

*Demurrer overruled.*